**Leslie K. KLENK, Jeffrey R. Zuckerman, and Gregory F. Taylor, Appellants,**

v.

**Nicolas BUSTAMANTE, Appellee.**

**No. 04–98–00576–CV.**

Court of Appeals of Texas, San Antonio.

Dec. 16, 1998.

Rehearing Overruled March 3, 1999.

Thomas D. Cordell, Debra J. McComas, Kent Rutter, Haynes & Boone, L.L.P., Houston, Stephen P. Allison, Haynes and Boone, L.L.P., San Antonio, for Appellant.

Jeffrey I. Kavy, George H. Spencer, Jr., Clemens & Spencer, P.C., San Antonio, for Appellee.

Before PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, PAUL W. GREEN, Justice.

## OPINION

PAUL W. GREEN, Justice.

This is an accelerated appeal from the denial of the special appearances of Leslie K. Klenk, Jeffrey R. Zuckerman, and Gregory F. Taylor (collectively, "the attorneys"). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.1998). This appeal questions the propriety of personal jurisdiction over out-of-state corporate counsel who allegedly committed tortious acts while representing a corporate employee working and residing in Texas. Because the attorneys lack sufficient minimum contacts with Texas as a matter of law, we reverse the trial court's order and dismiss the case.

### BACKGROUND

Until he was terminated in 1997, Bustamante was a securities broker in the San Antonio office of Smith Barney, Inc. Upon his termination, Bustamante filed suit against Smith Barney and J. Steven Austin, manager of the San Antonio office. In his first amended petition, Bustamante added the attorneys, who were in-house counsel at Smith Barney's New York head-

quarters, as defendants.[1] Once the trial court ordered the majority of Bustamante's claims to arbitration, the only remaining causes of action were for legal malpractice and deceptive trade practices, both associated with an alleged conflict of interest.[2] In his second amended petition, Bustamante added a conversion claim against all defendants.

The core factual dispute in the case underlying this appeal is the existence of an attorney-client relationship between Bustamante and each of the three attorneys. Bustamante contends the attorneys represented him in their individual capacity in several matters associated with his employment at Smith Barney. In support of their special appearances, the attorneys submitted sworn affidavits contending they did not represent Bustamante in an individual capacity and that any legal services provided Bustamante were performed as employees of Smith Barney and on behalf of Smith Barney. Facts pertinent to each attorney are summarized below.

### The Klenk Representation

Bustamante claims Klenk represented him in her individual capacity because she held herself out as his attorney and represented to him that he was her client.[3] He contends the representation commenced with a Securities and Exchange Commission (SEC) investigation of Bustamante and Smith Barney, which was conducted from the SEC's Fort Worth office. Bustamante further maintains Klenk neglected to inform him of any limitations on the scope of her representation in the SEC matter. Over long-distance telephone calls to San Antonio, Klenk provided legal advice and procured confidential information from Bustamante. She corresponded with both Bustamante in San Antonio and SEC attorneys in Fort Worth. Klenk also met with Bustamante in New York to review the SEC investigation.

To controvert these allegations, Klenk submitted an affidavit, stating she represented Bustamante only on behalf of Smith Barney. Notably, all evidence of Klenk's correspondence related to the SEC investigation is written on Smith Barney stationery with Klenk signing as vice president and general counsel. Klenk emphasized that, during the SEC investigation, all subpoenas and document requests were directed to Smith Barney. Finally, Klenk's conversations with Bustamante, whether by telephone or in person, occurred in New York.

### The Zuckerman Representation

According to Bustamante, Zuckerman assigned Klenk to the SEC matter and supervised her work. Zuckerman also responded to Bustamante's concern over the potential conflict of interest in Klenk's representation of both Bustamante and Smith Barney, acknowledging Klenk had spent a great deal of time on Bustamante's case. Bustamante characterizes this response as proof that Klenk represented him.

By affidavit, Zuckerman conceded supervising Klenk but emphasized that all of his work regarding the SEC matter oc-

---

1. Against all defendants, Bustamante asserted claims of legal malpractice, negligent and intentional misrepresentation, breach of fiduciary duty, and deceptive trade practices.

2. Defendants Smith Barney and Austin filed the motion to compel arbitration. The trial court found Bustamante had signed an SEC form U-4, in which he agreed "to arbitrate any dispute, claim or controversy arising out of or related to [his] job performance, employment and/or termination." Although the arbitration order does not specifically address the attorneys, arbitration of the same claims against them would be appropriate. *See Fridl v. Cook*, 908 S.W.2d 507, 514 (Tex.App.—El Paso 1995, writ dis'd w.o.j.); *see also Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 520 (Tex.App.—Austin 1998, no pet.)

3. Bustamante also produced the affidavit of Susana Reyes, Bustamante's former sales assistant, which stated that Klenk told Reyes she would be representing both Reyes and Bustamante in the SEC investigation. Klenk traveled to Texas to prepare Reyes for her testimony before the SEC, and Klenk reviewed Reyes's deposition with her.

curred in New York. Zuckerman stated he never personally advised Bustamante but met him only once in New York. Finally, Zuckerman informed Bustamante that Smith Barney could no longer represent him, which Zuckerman reiterated by correspondence on Smith Barney stationery.

### The Taylor Representation

In 1995, Smith Barney's San Antonio office became aware that Manuel von Schulenburg, a former Smith Barney employee and co-worker of Bustamante, was inciting Smith Barney clients to complain about their investments. Bustamante alleges that this activity was directed at his clients and that Taylor was assigned to assist him in the von Schulenburg matter. Taylor admitted assisting Bustamante in the matter but maintained he did so on behalf of Smith Barney.

Guillermo Durand, a Smith Barney client, filed a complaint with Smith Barney about Bustamante after the 1994 Mexican peso devaluation. Bustamante claims Taylor represented him in the Durand matter, which culminated in a federal securities arbitration. Bustamante blamed the arbitration on Taylor's deficient representation. Taylor, on the other hand, claimed he acted pursuant to a legitimate strategy. Finally, all of Taylor's correspondence associated with these investigations was printed on Smith Barney stationery.

### STANDARD AND SCOPE OF REVIEW

■ A party filing a special appearance bears the burden of negating all bases of personal jurisdiction. *See Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex.1982). On interlocutory appeal, we review the denial of a special appearance for an abuse of discretion. *Magnolia Gas Co. v. Knight Equip. & Mfg. Corp.*, No. 4–98–00156–CV, slip op. at 6, 1998 WL 652548, *3, (Tex.App.—San Antonio, Sept.23, 1998, no pet.). Under this standard, we defer to the trial court's resolution of factual issues and uphold the court's decision absent a showing of arbi-

trariness or unreasonableness. *See Walker v. Packer*, 827 S.W.2d 833, 839–840 (Tex.1992). In other words, the attorneys must establish the trial court could reasonably have reached only one conclusion. *See id.* at 841. However, we review the trial court's legal conclusions de novo. *Id.*

■ Because the record lacks findings of fact and conclusions of law, all questions of fact are presumed to support the judgment. *See Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex.1987). These findings of fact are inconclusive, however, because the appellate record contains a reporter's record. *Id.*

### PERSONAL JURISDICTION

■ The exercise of jurisdiction over a nonresident defendant must comport with both (1) the Texas long-arm statute, and (2) state and federal constitutional due process guarantees. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990). Because the broad language of Texas's long-arm statute allows the statute to reach as far as the federal constitution permits, our decision in this case turns on a due process analysis. *See Schlobohm*, 784 S.W.2d at 357. This due process inquiry is two-fold: (1) the defendants must have purposely established minimum contacts with the forum state; and (2) the exercise of jurisdiction must comport with "fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

In deciding whether the attorneys established minimum contacts with Texas, we examine their intentional activities and expectations. To establish minimum contacts with the forum state, the attorneys must have purposefully availed themselves of the privilege of conducting activities within the forum state, thus enjoying the benefits and protections of its laws. *See id.* at 474–75, 105 S.Ct. 2174. The attor-

neys' activities must justify a conclusion that they reasonably anticipated being called into a Texas court. *See id.* at 475, 105 S.Ct. 2174; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The focus of the minimum contacts analysis differs slightly between the two categories of personal jurisdiction—general and specific. *See Schlobohm,* 784 S.W.2d at 357. Bustamante contends the facts of this case implicate both types of jurisdiction. We disagree.

### 1. General Jurisdiction

General jurisdiction arises when a non-resident defendant engages in continuous and systematic contacts with the forum state. *Guardian Royal Exch.,* 815 S.W.2d at 230. The events giving rise to the cause of action need not have occurred in the forum state. *See CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996). However, the defendant's activities within the forum state must be substantial. *Schlobohm,* 784 S.W.2d at 357.

Bustamante asserts general jurisdiction over the attorneys is proper because they performed legal services for Smith Barney's Texas office. To support his contention, Bustamante alleges the attorneys engaged in long-distance communication between New York and Texas, made trips to Texas, and represented Texans.

These activities were not substantial. Furthermore, only Klenk traveled to Texas for the purpose of preparing another Smith Barney employee for her SEC testimony. Additionally, the trip was made after Bustamante had been notified that any attorney-client relationship was ended. As a matter of law, these contacts are insufficient to support general jurisdiction. *See Billingsley Parts & Equip., Inc. v. Vose,* 881 S.W.2d 165, 169 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (holding general jurisdiction improper despite non-resident's initiation of contact with Texas company, numerous phone calls

to Texas, and cashing checks drawn on a Texas bank). Accordingly, we cannot sustain the trial court's ruling on this ground. We therefore turn to the question of specific jurisdiction.

### 2. Specific Jurisdiction

Specific jurisdiction requires that a defendant purposefully direct his activities toward residents of the forum state and that the cause of action arise out of or relate to those activities. *Guardian Royal Exch.,* 815 S.W.2d at 230. In the case of nonresident-defendant lawyers, the "mere existence of an attorney-client relationship, unaccompanied by other sufficient contacts with the forum, does not confer personal jurisdiction over the non-resident in the forum state; more is required." *Sawtelle v. Farrell,* 70 F.3d 1381, 1392 (1st Cir.1995). *Accord Trinity Indus., Inc. v. Myers & Assocs., Ltd.,* 41 F.3d 229, 230 (5th Cir.1995). For example, the non-resident attorney must take affirmative action to promote business within the forum state. *See, e.g., Sher v. Johnson,* 911 F.2d 1357, 1363 (9th Cir.1990); *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1195 (9th Cir.1988). *See also Rowland & Rowland, P.C. v. Texas Employers Indem. Co.,* 973 S.W.2d 432, 435–36 (Tex. App.—Austin 1998, no pet.). Telephone calls and correspondence as activities directed at the forum state are generally insufficient. *See Sawtelle,* 70 F.3d at 1391; *Sher,* 911 F.2d at 1362–63; *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 226 (8th Cir.1987); *Mayes v. Leipziger,* 674 F.2d 178, 184–85 (2d Cir.1982). Not even isolated trips to the forum state during the representation, when coupled with the long-distance communication, amount to activities directed at the forum state. *See Sher,* 911 F.2d at 1363; *Austad,* 823 F.2d at 224–25.

Bustamante argues the attorneys purposefully directed activities at Texans by assuming an attorney-client relationship with him, engaging him in long-dis-

tance communication, communicating with regulatory agencies on his behalf, and traveling, in one instance, to Texas to prepare another client for a deposition. Furthermore, Bustamante claims these activities gave rise to his causes of action because the attorneys' out-of-state conduct caused injury to him in Texas.

Assuming the trial court found credible all the facts submitted by Bustamante, the assertion of personal jurisdiction over the attorneys is improper as a matter of law. The evidence shows, at most, the attorneys engaged in long-distance communication with Bustamante and on his behalf. No evidence indicates the attorneys sought clients or otherwise affirmatively promoted personal business within Texas.[4] This level of contact with Texas is insufficient to support purposeful availment for purposes of specific jurisdiction. Accordingly, we hold that personal jurisdiction over the attorneys is improper.

### Conclusion

In light of our holding that the attorneys lack sufficient minimum contacts with Texas, we need not address whether jurisdiction in this case would comport with fair play and substantial justice. Because we hold the assertion of personal jurisdiction over the attorneys is improper, we reverse the trial court's order and dismiss the case against the attorneys.

### OPINION ON REHEARING

■■■ This Court's judgment of December 16, 1998 is withdrawn, and the amended judgment dated March 3, 1999 is substituted. On rehearing, Bustamante contends our jurisdictional analysis contemplated only his malpractice claim, thereby neglecting his intentional tort

claims, which he alleges comprise the "majority" of his causes of action. In addition to malpractice, Bustamante charged the attorneys with negligent and intentional misrepresentation, breach of fiduciary duty, deceptive trade practices, and conversion.[1] Bustamante maintains that personal jurisdiction is proper over nonresidents who commit intentional torts outside Texas with the intent to cause injury in Texas. Thus, he argues specific jurisdiction over the attorneys, predicated upon their intentional torts, is proper.

Although Bustamante presented his claims in a discrete fashion, the jurisdictional facts underlying these claims all arose within the context of the alleged professional relationship between Bustamante and the individual attorneys.[2] Thus, our analysis of the jurisdictional facts, as they arose in the context of the alleged attorney-client relationship, applies to Bustamante's entire case, which hinges on the professional relationship he allegedly had with the attorneys. *See, e.g., Siskind v. Villa Found. for Educ., Inc.,* 642 S.W.2d 434, 436–37 (Tex.1982) (involving breach of contract, misrepresentation, and deceptive trade practices); *Trinity Indus., Inc. v. Myers & Assocs., Ltd.,* 41 F.3d 229, 230 (5th Cir.1995) (involving breach of fiduciary duty, civil conspiracy, and negligence). Accordingly, Bustamante's contention that we considered only his malpractice claim is without merit.

■■■ Bustamante rightly observes a nonresident defendant can expect to be haled into a Texas court if he commits intentional acts outside the state with the intent that harm be done within. *See Calder v. Jones,* 465 U.S. 783, 790, 104

---

4. Bustamante also claims he was injured in Texas, but this argument is erroneous. *See generally Jobe v. ATR Mkting., Inc.,* 87 F.3d 751 (5th Cir.1996) (finding no jurisdiction where tort committed out of state with only economic effects felt in forum state).

1. His remaining allegations of tortious conduct—wrongful termination, invasion of privacy, defamation, discrimination, fraud, and civil conspiracy—pertained only to Smith Barney and J. Steven Austin.

2. Notably, Bustamante's petition applied a singular factual backdrop to all of his claims.

S.Ct. 1482, 79 L.Ed.2d 804 (1984). Before the nonresident may be required to defend himself in another state, however, facts indicating an intent to cause harm within the forum state must be alleged or produced. *See id.; CSR Ltd. v. Link,* 925 S.W.2d 591, 595 (Tex.1996) (analyzing record for some indication of intent). Furthermore, the foreseeability of harm from the intentional conduct alone cannot support personal jurisdiction. *Calder,* 465 U.S. at 789, 104 S.Ct. 1482; *Link,* 925 S.W.2d at 595.

The jurisdictional facts emanating from Bustamante's allegations and the attorneys' affidavits, as enumerated in our panel opinion, reveal no indication of intent on the part of the attorneys to harm Bustamante. Notably, the link between the attorneys' contacts with Texas—the representation, phone calls, letters—and the litigation is missing. *Cf. Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc.,* 835 S.W.2d 645, 650 (Tex.App.—Houston [14th Dist.] 1992, no writ) (reasoning that defendant who transmitted false information to the resident of another state via telephone, knowing injury will be felt by a forum resident, must reasonably anticipate being haled to court there).[3] For example, we do not know what information transmitted by phone or letter gave rise to Bustamante's claims of intentional misrepresentation and deceptive trade practices.[4] Because the record in this case reveals no indication of intent on the part of the attorneys to cause harm to Bustamante, the assertion of personal jurisdiction over them would violate due process.

Bustamante apparently asserts the attorneys' actions had foreseeable consequences in Texas. For example, Bustamante alleged Klenk "knew or should have known [that her conduct] would have an impact in the state of Texas." He further asserts Zuckerman "deliberately engaged in conduct which resulted in [his] termination and discharge from Smith Barney, which intentional conduct constitutes a breach of fiduciary duty and which Defendant Zuckerman knew would have an impact in Texas." In addition, he alleged Taylor failed to defend him against a third party's attack to his reputation. Because foreseeability is insufficient to sustain personal jurisdiction, Bustamante's argument that the attorneys' out-of-state conduct supports personal jurisdiction is without merit. *Cf. Calder,* 465 U.S. at 789, 104 S.Ct. 1482 (holding jurisdiction proper where Florida residents allegedly circulated nationally a story it wrote about a Californian that concerned activities in California, was acquired from a California source, and caused emotional distress and financial hardship for a Californian); *Link,* 925 S.W.2d at 595 (holding jurisdiction improper where, assuming the defendant foresaw its product would end up in the forum state, there was no evidence the defendant took any act purposefully directed toward selling or distributing its product in Texas).

The motion for rehearing is overruled.

---

**3.** *See also National Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 774–76 (Tex.1995) (holding that various items of correspondence in evidence did not give rise to cause of action); *Siskind,* 642 S.W.2d at 436–37 (holding that advertisements in Texas, correspondence sent to Texas, and assurances made by telephone gave rise to misrepresentation claim); *Rowland & Rowland v. Texas Employers Indem. Co.,* 973 S.W.2d 432, 436 (Tex.App.—Austin 1998, no pet.) (finding two purposeful contacts underlying litigation: a letter confirming the firm would continue to protect the subrogation interests of a Texas entity in a wrongful death action, and distribution of a substantial portion of the proceeds to Texas residents); *Shearson Lehman Bros., Inc. v. Hughes, Hubbard & Reed,* 902 S.W.2d 60, 64–65 (Tex.App.—Houston [1st Dist.] 1995, writ denied) (holding firms' registration of securities did not give rise to cause of action emanating from Shearson's improper sale).

**4.** The majority of the letters contained in the record, written by the attorneys on behalf of Smith Barney, accompanied documents sent from corporate headquarters in New York to the SEC in Fort Worth.