Bobbie S. JONES, et al., Appellants,

v.

**J.P. SAUER AND SOHN, et al., Appellees.**

No. 04–00–00027–CV.

Court of Appeals of Texas, San Antonio.

July 19, 2000.

Rehearing Overruled Sept. 1, 2000.

158

Robert D. Rapp, Law Offices of Robert D. Rapp, Houston, for Appellant.

David P. Benjamin, Sam H. Lock, O'Connell, Benjamin & Coghlan, L.L.P., San Antonio, David R. Tippetts, Wilson, Else, Moskowitz, Edelman & Dicker, L.L.P., Houston, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, CATHERINE STONE, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

This accelerated appeal arises out of an accident where a revolver manufactured in Germany caused the death of a Louisiana resident when the revolver was dropped and discharged in Louisiana. Suit was

brought in Texas, where the deceased's mother lives. The appellants challenge the trial court's order granting the special appearances of SIG Arms Sauer GmbH formerly known as J.P. Sauer and Sohn GmbH ("Sauer") and SIG Industrial Company Holding Ltd. formerly known as SIG Swiss Industrial Company ("SIG"). We affirm the trial court's order.

## BACKGROUND

In 1967, Sauer manufactured a revolver and sold it to an independent distributor in Los Angeles, California. In 1997, the gun discharged unexpectedly in Louisiana, resulting in the death of Hondo Jones, who resided in Louisiana at the time of his death. Several of Jones's beneficiaries sued numerous defendants, including Sauer and SIG.

Both Sauer and SIG filed special appearances. Sauer is a German corporation, and SIG is a Swiss corporation. Sauer manufactures guns, including the gun that discharged, and sells them to an exclusive distributor in the United States. The distributor then resells them to other distributors, retailers, or purchasers throughout the United States. Sauer's exclusive distributor since 1984 is SIG Arms, Inc., which is located in New Hampshire. Both SIG Arms, Inc. and Sauer are indirect subsidiaries of SIG. Sauer previously had exclusive distributorship arrangements with companies in California and Nebraska.

Attached to Sauer's special appearance is the affidavit of its president, Wulf Kraft. Kraft states that Sauer did not commit a tort in Texas. Kraft further states that Sauer: (1) has never done any business on any regular basis in Texas; (2) has never owned any real or personal property in Texas; (3) has never had any employees, representatives, or agents in Texas; (4) has never leased any office space or held any assets in Texas; and (5) has never marketed or advertised the gun that was the subject of the lawsuit in Texas.

Attached to SIG's special appearance is the affidavit of its general counsel, Reinhard Von Meiss. Von Meiss states that SIG has never manufactured or sold the gun which is the subject of the lawsuit. At the time that gun was manufactured and sold, SIG did not have any ownership interest in Sauer. Von Meiss further states that SIG: (1) does not reside in Texas, is not incorporated in Texas, is not required to maintain and does not maintain a registered agent in Texas, and does not have a bank account, office, warehouse, or other place of business in Texas; (2) does not have any officers, employees, servants, or agents in Texas, and none of its officers, employees, or agents have ever regularly conducted, transacted, or participated in the purchase, sale, distribution, resale, refinancing, or service of any goods or services in Texas; (3) has never filed a lawsuit in Texas; (4) owns no property in Texas; (5) did not commit a tort in Texas; and (6) does not have an address or telephone listing in Texas. Von Meiss contends that SIG is licensed under the laws of Switzerland and is a separate and distinct entity from any subsidiaries in which it may own an interest.

The plaintiffs countered the affidavits of Kraft and Von Meiss by evidence that over 45,000 firearms manufactured in whole or in part by Sauer were ultimately sold by SIG Arms to Texas distributors from 1991–1999. Those firearms had a value in excess of $24 million. The plaintiffs introduced the affidavit of Floyd Stewart, who the plaintiffs offered as a firearms expert. Stewart contacted numerous gun dealers, who informed him that they had sold firearms manufactured by Sauer. Stewart stated, "These weapons were purchased through gun distributors in Texas who would, in turn, buy them from importers for J.P. Sauer & Sohn." Stewart further stated:

Foreign manufacturers of firearms, including J.P. Sauer & Sohn, typically utilize a single or small number of principal importers/distributors to sell their fire-

arms. The identity of these importers changed periodically, but the pattern remains the same. People with knowledge in the industry have been familiar with this pattern of operation; whereby J.P. Sauer & Sohn and other foreign manufacturers avoid having agents or offices in several states, including states where they transact a substantial portion of their business, including Texas. This pattern of using a single or couple of agents typically located in no more than one or two states enable [sic] the foreign gun manufacturers to attempt to avoid liability and challenge being sued in the vast number of states in which they are doing business. For example, J.P. Sauer & Sohn made a very similar model, like the Western Marshal gun involved in this case called the Texas Marshal.

The trial court granted the special appearances for both Sauer and SIG. The trial court also entered findings of fact and conclusions of law. The appellants contend that they did not receive proper notice of these and request that this court treat them as a nullity. However, appendix 2 to appellants' brief reveals that appellants received the findings and conclusions on March 31, 2000, and appellants' brief was not filed until April 19, 2000.

The trial court entered the following findings with regard to Sauer. Sauer is a German corporation and is a separate and distinct company. Sauer manufactured the firearm made the basis of the lawsuit in 1967, and the firearm was then sold and shipped to an entity in Los Angeles, California. The incident and fatality made the basis of the lawsuit occurred as a result of the discharge of a firearm in New Orleans, Louisiana. Sauer has not marketed or advertised the subject firearm towards the State of Texas or to persons within Texas. Sauer never conducted business on a regular basis in Texas, and Sauer did not commit the subject tort in Texas. Sauer never owned any property or assets in Texas and never maintained an office in Texas.

Sauer never had any employees, representatives, or agents located in Texas. Sauer never had a bank account in Texas and never purposefully availed itself of any privilege or benefit of conducting business in Texas. Sauer had no regular, continuous, or systematic contacts with Texas. Sauer's contacts with Texas were either nonexistent or so minimal that it could not reasonably have foreseen that it would have been sued in Texas.

The trial court entered the following findings with regard to SIG. SIG is a Swiss company and is licensed and based in Switzerland. SIG never manufactured or sold the firearm which is the basis of the lawsuit. When the firearm made the basis of the lawsuit was manufactured and sold, SIG had no ownership interest in the manufacturing corporation. SIG and its employees did not design, produce, manufacture, assemble, construct, fabricate, supply, merchandise, advertise, promote, evaluate, or analyze the firearm involved in the case. SIG never conducted business in Texas. SIG does not have a bank account, office, or place of business in Texas. SIG and its employees never regularly transacted or participated in the purchase, sale, distribution, resale, refinancing, or service of any goods or services in Texas. SIG never registered to do business in Texas. SIG never had any employees, servants, or agents in Texas. SIG never filed a lawsuit in Texas. SIG did not commit the subject tort in Texas. SIG is a separate and distinct entity from any subsidiary in which it may own an interest. SIG has no regular, continuous, or systematic contacts with Texas. SIG never purposefully availed itself of any privilege or benefit of conducting business in Texas. SIG's contacts with Texas were either nonexistent or so minimal that it could not reasonably have foreseen that it would have been sued in Texas.

The trial court entered the following conclusions of law. Texas courts lack general jurisdiction over SIG and Sauer, and the court does not have specific jurisdic-

tion over Sauer and SIG as the incident made the basis of the lawsuit did not occur in Texas. The assertion of personal jurisdiction over SIG and Sauer would offend traditional notions of fair play and substantial justice and would violate the United States Constitution and the Texas long-arm statute.

## STANDARD OF REVIEW

A nonresident defendant must negate all bases of personal jurisdiction to prevail in a special appearance. *CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex.1996). On interlocutory appeal, we review the granting of a special appearance for an abuse of discretion. *Klenk v. Bustamante*, 993 S.W.2d 677, 681 (Tex.App.—San Antonio 1998, no pet.). Under this standard, we review the trial court's legal conclusions *de novo. Id.* With regard to factual issues, however, we may not disturb a trial court's resolution of factual issues unless the trial court could reasonably have reached only one conclusion.[1] *Id.*

A court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Texas long-arm statute are satisfied. *CSR Ltd.*, 925 S.W.2d at 594. The Texas Supreme Court has repeatedly interpreted the Texas long-arm statute to reach as far as the federal constitutional requirements of due process will allow. *Id.* Consequently, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *Id.*

The federal constitutional test of due process consists of two parts: (1) whether the nonresident defendant has purposely established "minimum contacts" with the forum state; and (2) if so, whether the exercise of jurisdiction comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The minimum contacts requirement is satisfied if either general or specific jurisdiction exists.[2] *CSR Ltd.*, 925 S.W.2d at 595.

## DISCUSSION

An examination of minimum contacts is not always necessary to determine whether a state court's assertion of personal jurisdiction is constitutional. *See Burger King Corp. v. Rudzewicz*, 471 U.S. at 476–78, 105 S.Ct. 2174. Assuming that either general or specific jurisdiction is established, the contacts establishing jurisdiction are evaluated in light of other legal factors to determine whether a finding of personal jurisdiction comports with principles of substantial justice and fair play. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 358 (Tex.1990), *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 410 (Tex. App.—Houston [14th Dist.] 1997, no writ). These factors include: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and efficient relief; (4) the inter-

---

1. In *Transportes Aereos de Coahuila, S.A. v. Falcon*, 5 S.W.3d 712 (Tex.App.—San Antonio, 1999, pet. denied), we noted that it could be argued that the proper standard of review, even with respect to factual issues, should be *de novo.* We noted that such an argument would be particularly persuasive in that case because the trial court had the same record to review as was presented to this court, i.e., no live testimony was introduced at the hearing that would place the trial court in a better position to evaluate credibility. We did not reconsider the proper standard of review because we found that applying the more deferential abuse of discretion standard did not affect the ultimate outcome in that case. Similarly, we do not reconsider the standard in this case because it does not affect the ultimate outcome.

2. In this case, the appellants conceded at the hearing before the trial court that no specific jurisdiction exists. The reporter's record reflects the following exchange:

   THE COURT: We don't have a specific jurisdiction case here, do we?
   MR. RAPP [Appellants' attorney]: No, ma'am, we do not.

state judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex.1991).

The petition names five plaintiffs (Jones's mother, two brothers, grandmother and grandfather) in addition to Jones by and through the representative of his estate. The only plaintiff who is a Texas resident is Jones's mother. Jones's two brothers and his grandmother and grandfather are each residents of Louisiana, and Jones was a resident of Louisiana at the time of his death. The shooting occurred in Louisiana, and, presumably, a Louisiana probate court is in charge of resolving Jones's estate.

■ Although the burden of defending the underlying lawsuit would be similar in Texas and Louisiana, the United States Supreme Court has noted that in evaluating the "substantial justice and fair play" factors, the unique burdens placed upon a foreign corporation which must defend itself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders. *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

Although the evidence demonstrated that the number of revolvers that have been sold in Texas is great, which would give Texas some social interest in resolving the controversy, Texas's interest cannot be considered in isolation. We are required to consider the shared interest of the States in furthering fundamental substantive social policies. *See Asahi*, 480 U.S. at 115, 107 S.Ct. 1026 (courts are required to take into consideration the interests of the several states in addition to the forum state). Louisiana has an equal interest in the substantive social policies relating to the sale and distribution of

defective revolvers—the death occurred there.

Because Jones's death occurred in Louisiana, and there is no evidence that the firearm that was the subject of the lawsuit ever belonged to a Texas resident, Louisiana has a greater interest in adjudicating the dispute. Since the shooting occurred in Louisiana and all but one of the plaintiffs reside in Louisiana, Louisiana would likely provide the most efficient resolution to the controversy.

"Considering the international context, the heavy burden on the alien defendant[s], and the slight interest of the ... forum State," *Asahi*, 480 U.S. at 116, 107 S.Ct. 1026, the trial court was correct in concluding that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. We note, however, that Jones's beneficiaries are not without a remedy. That remedy must simply be sought in another jurisdiction.

### CONCLUSION

The trial court's order granting the special appearance of Sauer and SIG is affirmed.