Richard Christopher WHALEN,
Appellant,

v.

LAREDO NATIONAL BANCSHARES,
INC., Appellee.

No. 04–00–00357–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 20, 2000.

John A. Convery, Hasdorff & Convery, P.C., San Antonio, Walker F. Todd, Chagrin Falls, OH, for Appellant.

Jason R. Cliffe, Ricardo G. Cedillo, Davis, Adami & Cedillo, Inc., San Antonio, Billy R. Flanigan, Houston, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justices.

## OPINION

CATHERINE STONE, Justice.

Richard Christopher Whalen appeals the trial court's denial of his special appearance, asserting he is not subject to personal jurisdiction in Texas. The trial court found that Whalen had sufficient minimum

contacts to justify the exercise of personal jurisdiction. We affirm the trial court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

Laredo National Bancshares, Inc. (hereinafter LNB) contracted to purchase Mercantile Financial Enterprises, Inc. and Mercantile Bank, N.A. (hereinafter Mercantile). The purchase required approval by the Federal Reserve System Board of Governors. Although the purchase contract was executed and the regulatory approval process was initiated, approval was never granted because the Board of Governors failed to take action on LNB's request. LNB filed suit against Legal Research International, a Texas corporation, and Christopher Whalen, a New York investment banker, alleging that Whalen was an agent or representative of Legal Research International, and that he tortiously interfered with LNB's contract to purchase Mercantile. This allegation was based on Whalen's admission that he had sent a letter to a third party indicating that due to his efforts, the Federal Reserve System failed to approve LNB's purchase of Mercantile.

Whalen filed a special appearance objecting to jurisdiction. Whalen asserted that he negated the only jurisdictional basis plead by LNB, that the court should not consider any other grounds for jurisdiction not pled in LNB's petition, and that upon proof of his nonresident status, his special appearance should be granted. Alternatively, Whalen contended no other facts existed that would properly make him subject to either specific or general jurisdiction because he had no business ties with Texas and he did not commit any act causing harm in Texas. Following an evidentiary hearing, the trial court denied Whalen's special appearance. In its findings of fact and conclusions of law the trial court determined that both general and specific jurisdiction were established.

### STANDARD OF REVIEW

On interlocutory appeal, we review the trial court's grant or denial of a special appearance for an abuse of discretion. *Magnolia Gas v. Knight Equipment & Mfg.*, 994 S.W.2d 684, 689 (Tex.App.—San Antonio 1998, no pet.). Under this standard, we will not disturb the trial court's resolution of factual issues absent a showing of arbitrariness or unreasonableness. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). We review the trial court's legal conclusions *de novo*, and we will not disturb those legal conclusions absent a showing of misapplication of the law. *Magnolia Gas*, 994 S.W.2d at 689.

### PERSONAL JURISDICTION

A Texas court may exercise jurisdiction over a non-resident if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction comports with the state and federal constitutional guarantees of due process. *Guardian Royal Exch. Assur., Ltd. v. English China*, 815 S.W.2d 223, 226 (Tex.1991). The Texas long-arm statute authorizes the exercise of jurisdiction over nonresident defendants "doing business" in Texas. TEX.CIV.PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). Although not an exhaustive list, several acts enumerated in the statute constitute "doing business." *Disney Enterprises, Inc. v. Esprit Finance, Inc.*, 981 S.W.2d 25, 29 (Tex.App.—San Antonio 1998, pet. dism'd w.o.j.). Since the broad language of the long-arm statute permits an expansive reach limited only by federal constitutional requirements of due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990), we need only consider whether it is consistent with federal constitutional requirements of due process for a Texas court to exercise personal jurisdiction over Whalen.

Under the federal constitutional test of due process, a state may assert personal jurisdiction over a nonresident defendant if: (1) the defendant has purposefully established minimum contacts

with the forum state; and (2) the exercise of jurisdiction comports with fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *National Industrial Sand Assoc. v. Gibson,* 897 S.W.2d 769, 772 (Tex.1995). The presence of sufficient minimum contacts may support either general or specific jurisdiction. *Guardian Royal Exch. Assur.,* 815 S.W.2d at 227. General jurisdiction arises when a nonresident defendant engages in continuous and systematic contacts with the forum state. *Id.* at 230. Specific jurisdiction is properly asserted when the cause of action arises out of or relates to the nonresident defendant's contact with the forum state. *Id.* When applying the minimum contacts analysis, we focus on Whalen's intentional activities and expectations in deciding whether it is proper to call him before a Texas court. *See World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 290–91, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

### PLEADING JURISDICTION

■ In his first two issues Whalen claims that LNB's pleadings do not support the exercise of personal jurisdiction. Whalen argues that LNB alleged only one jurisdictional fact, and that he conclusively disproved the alleged fact, thereby defeating the sole jurisdictional basis pled by LNB. In support of this claim, Whalen points to the following language in LNB's original petition:

### JURISDICTION AND VENUE

\* \* \* \* \*

6. Defendant, Whalen, purposefully established minimum contacts with Texas by conducting business through LRI [Legal Research International]. Whalen's business in Texas includes acting as Treasurer and Director for LRI, which is a Texas corporation. Therefore, Whalen established both general and specific jurisdiction in Texas.

■ While this pleading clearly relies on Whalen's relationship with a Texas corporation as a basis for jurisdiction, we disagree with Whalen's contention that this is the sole jurisdictional allegation in LNB's pleading. LNB also alleged that Whalen, a former Federal Reserve System employee, "by his own admission engaged in a deliberate campaign of actions designed to derail LNB's application to acquire Mercantile." Additionally, LNB alleged that "Whalen stated that through his efforts the Board through inaction did not permit LNB to acquire Mercantile," and that Whalen "intentionally and willfully engaged in conduct that interfered with the Contract by taking deliberate actions designed to prevent LNB from gaining regulatory approval for its acquisition of Mercantile." These allegations state a basis for jurisdiction that is not contingent on an established business relationship between Whalen and LRI. As alleged by LNB, Whalen engaged in deliberate conduct intended to produce a specific result in Texas-the thwarting of an acquisition contract involving two Texas banks. Whether Whalen engaged in this conduct as an employee of a Texas corporation or merely as a New York resident, he still may be required to defend himself in a Texas court. A nonresident such as Whalen can be subjected to personal jurisdiction in Texas if he commits intentional acts outside the state with the intent that harm occur in Texas. *See Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *CSR, Ltd. v. Link,* 925 S.W.2d 591, 595 (Tex.1996).

■ Applying the general rules of notice pleading to LNB's original petition, *see* TEX.R.CIV.P. 45, we believe the allegations provided Whalen with sufficient information for him to prepare both a challenge to the assertion of jurisdiction and a defense to the claims. Even if we assume, as Whalen argues, that he conclusively proved he was never affiliated with the Texas corporation Legal Research International, other allegations were made that

at least provided notice of alleged specific jurisdiction. It was Whalen's burden to conclusively negate all pleaded bases of jurisdiction, *see Siskind v. Villa Foundation for Education, Inc.*, 642 S.W.2d 434, 438 (Tex.1982), and merely disproving any affiliation with Legal Research International did not negate all jurisdictional allegations. To the extent issues one and two are based on claims of pleading insufficiencies, they are overruled.

### FEDERAL DUE PROCESS REQUIREMENTS

Our inquiry does not end with our determination that LNB's pleadings sufficiently set forth a basis for exercise of jurisdiction in Texas. We must still determine if federal constitutional due process guarantees have been met. Accordingly, we review the record to ascertain whether the trial court abused its discretion in ruling that sufficient minimum contacts exist, and that the exercise of jurisdiction comports with fair play and substantial justice. Whalen challenges these rulings in his third and fourth issues. We begin with a review of specific jurisdiction.

Specific jurisdiction may be asserted if the cause of action arises out of or relates to the nonresident defendant's contact with the forum state. *See Guardian Royal Exch.*, 815 S.W.2d at 230. The contact between the defendant and the forum state must have occurred as a result of the defendant's purposeful conduct, and not because of the plaintiff's unilateral activity. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Texas courts exercise specific jurisdiction over a defendant if the defendant's activities in Texas are isolated or disjointed, but the cause of action arises from those activities. *Schlobohm*, 784 S.W.2d at 357; *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 663 (Tex.1987). Specific jurisdiction may also be established when a nonresident defendant commits intentional acts outside the state with the intent to cause harm in Texas. *See CSR, Ltd. v. Link*, 925 S.W.2d

at 595; *Klenk v. Bustamante*, 993 S.W.2d 677, 682 (Tex.App.—San Antonio 1998, no pet.).

Pertinent to the specific jurisdiction question is the trial court's finding that Whalen took credit for and admitted to interfering with LNB's contract to purchase Mercantile in a written correspondence. This finding is based on evidence that Whalen sent a fax to a potential bank investor in Florida, in which he was critical of the Hank family, the majority owner of LNB. The fax, which was sent after LNB's failed attempt to obtain regulatory approval, states in pertinent part as follows:

> In terms of you [sic] negotiating strategy, you should be mindful of the fact that the Fed, through regulatory inaction, did not permit LNB to purchase Mercantile Bank in Brownsville (through my efforts and those of others), thus expansion via acquisitions is not an option for the Grupo Hank to grow the LNB franchise.

Whalen attempted to distance himself from these remarks by claiming that the Federal Reserve Board contacted him regarding an investigation into the Hank family and he did not initiate the contact with the Board or anyone else in regard to this issue. The questions focused on the Hank family and not the Mercantile Bank purchase. Whalen asserts he does not know why or how the Federal Reserve Board made its decision; he merely entertained the thought that he and others from whom the Board solicited information might have contributed to the decision not to act on the approval of the contract. Whalen testified that the statement to the Florida investor was complete "puffery" used to impress a client.

Whalen provided similar testimony regarding his communications with Steve Martin of the Federal Drug Enforcement Agency in Texas. He noted that Martin contacted him, he did not know where Martin was calling from, and that their conversation pertained to a money laun-

dering and drug trafficking investigation, not LNB's attempted purchase of Mercantile.

Whalen's attempt to cast his prior conduct in a different light and to disclaim his statements as mere "puffery" presents an issue of credibility. The trial court is vested with discretion to believe or disbelieve this testimony, and we are not free to disturb the court's factual resolutions in the absence of arbitrariness or unreasonableness.

The trial court's consideration of Whalen's testimony may well have been influenced by the testimony of Gary Jacobs, President and CEO of LNB. Jacobs testified that during the time period when the approval process was pending before the Federal Reserve System, he attended a luncheon at which Whalen was present. Jacobs stated that Whalen seemed "disturbingly and alarmingly knowledgeable about the status of my application with the Fed to buy Mercantile." Jacobs recalled that Whalen tried to convince him that he would be unable to close the Mercantile purchase with Mexican shareholders, such as the Hank family. On this record, we cannot say the court's fact findings are arbitrary or unreasonable. Whalen's statement in the fax letter was sufficient for the trial judge to have reasonably determined that Whalen purposefully directed his activities toward the contract between LNB and Mercantile, both located in Texas, and that this cause of action arose out of those activities. *See Siskind*, 642 S.W.2d at 438 n. 5; *Klenk*, 993 S.W.2d at 682. We cannot find that the only conclusion the trial court could have reached was that there was no basis for specific jurisdiction.

■ The final issue to be resolved is whether the exercise of personal jurisdiction in this case is consistent with the federal requirements of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Courts weigh the following factors to determine fair play and substantial justice: (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 476–77, 105 S.Ct. 2174.

Applying the above factors to this case, the burden on Whalen does not seem overly great when taking into account Whalen's initial willingness to take credit for the Federal Reserve Board's decision. Though he argues now this was puffery and his statement was inaccurate, he still admits he was taking partial credit for the decision. The harm occurred in Texas to a Texas corporation, indicating an interest to the State of Texas in adjudicating this dispute. The most efficient resolution of the controversy can be accomplished in the state in which the harm occurred. Accordingly, we hold that the trial judge did not abuse its discretion in determining that the assumption of jurisdiction does not offend traditional notions of fair play and substantial justice.

Since we have determined that the trial court acted reasonably in denying Whalen's special appearance on grounds of specific jurisdiction, we do not reach the question of general jurisdiction. We affirm the order of the trial court.