No. 04-00-00357-CV


Richard Christopher WHALEN,


Appellant



v.



LAREDO NATIONAL BANCSHARES, INC.,


Appellee



From the 341st Judicial District Court, Webb County, Texas


Trial Court No. 99CVQ00940D3


Honorable Elma Teresa Salinas Ender, Judge Presiding



Opinion by: Catherine Stone, Justice


Sitting: Catherine Stone, Justice

 Paul W. Green, Justice

 Karen Angelini, Justice


Delivered and Filed: December 20, 2000


AFFIRMED


 Richard Christopher Whalen appeals the trial court's denial of his special appearance,
asserting he is not subject to personal jurisdiction in Texas. The trial court found that Whalen had
sufficient minimum contacts to justify the exercise of personal jurisdiction. We affirm the trial court's
order.


Factual and Procedural Background


 Laredo National Bancshares, Inc. (hereinafter LNB) contracted to purchase Mercantile
Financial Enterprises, Inc. and Mercantile Bank, N.A. (hereinafter Mercantile). The purchase
required approval by the Federal Reserve System Board of Governors. Although the purchase
contract was executed and the regulatory approval process was initiated, approval was never granted
because the Board of Governors failed to take action on LNB's request. LNB filed suit against Legal
Research International, a Texas corporation, and Christopher Whalen, a New York investment
banker, alleging that Whalen was an agent or representative of Legal Research International, and that
he tortiously interfered with LNB's contract to purchase Mercantile. This allegation was based on
Whalen's admission that he had sent a letter to a third party indicating that due to his efforts, the
Federal Reserve System failed to approve LNB's purchase of Mercantile. 

 Whalen filed a special appearance objecting to jurisdiction. Whalen asserted that he negated
the only jurisdictional basis plead by LNB, that the court should not consider any other grounds for
jurisdiction not pled in LNB's petition, and that upon proof of his nonresident status, his special
appearance should be granted. Alternatively, Whalen contended no other facts existed that would
properly make him subject to either specific or general jurisdiction because he had no business ties
with Texas and he did not commit any act causing harm in Texas. Following an evidentiary hearing,
the trial court denied Whalen's special appearance. In its findings of fact and conclusions of law the
trial court determined that both general and specific jurisdiction were established.

Standard of Review


 On interlocutory appeal, we review the trial court's grant or denial of a special appearance
for an abuse of discretion. Magnolia Gas v. Knight Equipment & Mfg., 994 S.W.2d 684, 689 (Tex.
App.-San Antonio 1998, no pet.). Under this standard, we will not disturb the trial court's resolution
of factual issues absent a showing of arbitrariness or unreasonableness. Walker v. Packer, 827
S.W.2d 833, 839-40 (Tex. 1992). We review the trial court's legal conclusions de novo, and we will
not disturb those legal conclusions absent a showing of misapplication of the law. Magnolia Gas,
994 S.W.2d at 689. 

Personal Jurisdiction


 A Texas court may exercise jurisdiction over a non-resident if: (1) the Texas long-arm statute
authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction comports with the state and
federal constitutional guarantees of due process. Guardian Royal Exch. Assur., Ltd. v. English
China, 815 S.W.2d 223, 226 (Tex. 1991). The Texas long-arm statute authorizes the exercise of
jurisdiction over nonresident defendants "doing business" in Texas. Tex. Civ. Prac. & Rem. Code
Ann. § 17.042 (Vernon 1997). Although not an exhaustive list, several acts enumerated in the
statute constitute "doing business." Disney Enterprises, Inc. v. Esprit Finance, Inc., 981 S.W.2d 25,
29 (Tex. App.-San Antonio 1998, pet. dism'd w.o.j.). Since the broad language of the long-arm
statute permits an expansive reach limited only by federal constitutional requirements of due process,
Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990), we need only consider whether it is
consistent with federal constitutional requirements of due process for a Texas court to exercise
personal jurisdiction over Whalen.

 Under the federal constitutional test of due process, a state may assert personal jurisdiction
over a nonresident defendant if: (1) the defendant has purposefully established minimum contacts with
the forum state; and (2) the exercise of jurisdiction comports with fair play and substantial justice.
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985); National Industrial Sand Assoc. v.
Gibson, 897 S.W.2d 769, 772 (Tex. 1995). The presence of sufficient minimum contacts may
support either general or specific jurisdiction. Guardian Royal Exch. Assur., 815 S.W.2d at 227.
General jurisdiction arises when a nonresident defendant engages in continuous and systematic
contacts with the forum state. Id. at 230. Specific jurisdiction is properly asserted when the cause
of action arises out of or relates to the nonresident defendant's contact with the forum state. Id.
When applying the minimum contacts analysis, we focus on Whalen's intentional activities and
expectations in deciding whether it is proper to call him before a Texas court. See World-Wide
Volkswagen Corp. v. Woodson, 444 U.S. 286, 290-91 (1980). 

Pleading Jurisdiction 


 In his first two issues Whalen claims that LNB's pleadings do not support the exercise of
personal jurisdiction. Whalen argues that LNB alleged only one jurisdictional fact, and that he
conclusively disproved the alleged fact, thereby defeating the sole jurisdictional basis pled by LNB.
In support of this claim, Whalen points to the following language in LNB's original petition:

JURISDICTION AND VENUE


* * * * * 

 6. Defendant, Whalen, purposefully established minimum contacts with Texas by
conducting business through LRI [Legal Research International]. Whalen's business
in Texas includes acting as Treasurer and Director for LRI, which is a Texas
corporation. Therefore, Whalen established both general and specific jurisdiction in
Texas.


 While this pleading clearly relies on Whalen's relationship with a Texas corporation as a basis
for jurisdiction, we disagree with Whalen's contention that this is the sole jurisdictional allegation in
LNB's pleading. LNB also alleged that Whalen, a former Federal Reserve System employee, "by his
own admission engaged in a deliberate campaign of actions designed to derail LNB's application to
acquire Mercantile." Additionally, LNB alleged that "Whalen stated that through his efforts the
Board through inaction did not permit LNB to acquire Mercantile," and that Whalen "intentionally
and willfully engaged in conduct that interfered with the Contract by taking deliberate actions
designed to prevent LNB from gaining regulatory approval for its acquisition of Mercantile." These
allegations state a basis for jurisdiction that is not contingent on an established business relationship
between Whalen and LRI. As alleged by LNB, Whalen engaged in deliberate conduct intended to
produce a specific result in Texas - the thwarting of an acquisition contract involving two Texas
banks. Whether Whalen engaged in this conduct as an employee of a Texas corporation or merely
as a New York resident, he still may be required to defend himself in a Texas court. A nonresident
such as Whalen can be subjected to personal jurisdiction in Texas if he commits intentional acts
outside the statewith the intent that harm occur in Texas. See Calder v. Jones, 465 U.S. 783, 790
(1984); CSR, Ltd. v. Link, 925 S.W.2d 591, 595 (Tex. 1996). 

 Applying the general rules of notice pleading to LNB's original petition, see Tex. R.Civ. P.
45, we believe the allegations provided Whalen with sufficient information for him to prepare both
a challenge to the assertion of jurisdiction and a defense to the claims. Even if we assume, as Whalen
argues, that he conclusively proved he was never affiliated with the Texas corporation Legal Research
International, other allegations were made that at least provided notice of alleged specific jurisdiction.
It was Whalen's burden to conclusively negate all pleaded bases of jurisdiction, see Siskind v. Villa
Foundation for Education, Inc., 642 S.W.2d 434, 438 (Tex. 1982), and merely disproving any
affiliation with Legal Research International did not negate all jurisdictional allegations. To the extent
issues one and two are based on claims of pleading insufficiencies, they are overruled. 

 

Federal Due Process Requirements


 Our inquiry does not end with our determination that LNB's pleadings sufficiently set forth
a basis for exercise of jurisdiction in Texas. We must still determine if federal constitutional due
process guarantees have been met. Accordingly, we review the record to ascertain whether the trial
court abused its discretion in ruling that sufficient minimum contacts exist, and that the exercise of
jurisdiction comports with fair play and substantial justice. Whalen challenges these rulings in his
third and fourth issues. We begin with a review of specific jurisdiction.

 Specific jurisdiction may be asserted if the cause of action arises out of or relates to the
nonresident defendant's contact with the forum state. See Guardian Royal Exch., 815 S.W.2d at
230. The contact between the defendant and the forum state must have occurred as a result of the
defendant's purposeful conduct, and not because of the plaintiff's unilateral activity. Helicopteros
Nacionales de Colombia v. Hall, 466 U.S. 408, 416 (1984). Texas courts exercise specific
jurisdiction over a defendant if the defendant's activities in Texas are isolated or disjointed, but the
cause of action arises from those activities. Schlobohm, 784 S.W.2d at 357; Zac Smith & Co. v. Otis
Elevator Co., 734 S.W.2d 662, 663 (Tex. 1987). Specific jurisdiction may also be established when
a nonresident defendant commits intentional acts outside the state with the intent to cause harm in
Texas. See CSR, Ltd v. Link, 925 S.W.2d at 595; Klenk v. Bustamante, 993 S.W.2d 677, 682 (Tex.
App.-San Antonio 1998, no pet.). 

 Pertinent to the specific jurisdiction question is the trial court's finding that Whalen took

credit for and admitted to interfering with LNB's contract to purchase Mercantile in a written
correspondence. This finding is based on evidence that Whalen sent a fax to a potential bank investor
in Florida, in which he was critical of the Hank family, the majority owner of LNB. The fax, which
was sent after LNB's failed attempt to obtain regulatory approval, states in pertinent part as follows:

 In terms of you [sic] negotiating strategy, you should be mindful of the fact that the
Fed, through regulatory inaction, did not permit LNB to purchase Mercantile Bank
in Brownsville (through my efforts and those of others), thus expansion via
acquisitions is not an option for the Grupo Hank to grow the LNB franchise.


 Whalen attempted to distance himself from these remarks by claiming that the Federal Reserve
Board contacted him regarding an investigation into the Hank family and he did not initiate the
contact with the Board or anyone else in regard to this issue. The questions focused on the Hank
family and not the Mercantile Bank purchase. Whalen asserts he does not know why or how the
Federal Reserve Board made its decision; he merely entertained the thought that he and others from
whom the Board solicited information might have contributed to the decision not to act on the
approval of the contract. Whalen testified that the statement to the Florida investor was complete
"puffery" used to impress a client. 

 Whalen provided similar testimony regarding his communications with Steve Martin of the
Federal Drug Enforcement Agency in Texas. He noted that Martin contacted him, he did not know
where Martin was calling from, and that their conversation pertained to a money laundering and drug
trafficking investigation, not LNB's attempted purchase of Mercantile.

 Whalen's attempt to cast his prior conduct in a different light and to disclaim his statements
as mere "puffery" presents an issue of credibility. The trial court is vested with discretion to believe
or disbelieve this testimony, and we are not free to disturb the court's factual resolutions in the
absence of arbitrariness or unreasonableness. 

 The trial court's consideration of Whalen's testimony may well have been influenced by the
testimony of Gary Jacobs, President and CEO of LNB. Jacobs testified that during the time period
when the approval process was pending before the Federal Reserve System, he attended a luncheon
at which Whalen was present. Jacobs stated that Whalen seemed "disturbingly and alarmingly
knowledgeable about the status of my application with the Fed to buy Mercantile." Jacobs recalled
that Whalen tried to convince him that he would be unable to close the Mercantile purchase with
Mexican shareholders, such as the Hank family. On this record, we cannot say the court's fact
findings are arbitrary or unreasonable. Whalen's statement in the fax letter was sufficient for the trial
judge to have reasonably determined that Whalen purposefully directed his activities toward the
contract between LNB and Mercantile, both located in Texas, and that this cause of action arose out
of those activities. See Siskind, 642 S.W.2d at 438 n.5; Klenk, 993 S.W.2d at 682. We cannot find
that the only conclusion the trial court could have reached was that there was no basis for specific
jurisdiction.

 The final issue to be resolved is whether the exercise of personal jurisdiction in this case is
consistent with the federal requirements of fair play and substantial justice. See International Shoe
Co. v. Washington, 326 U.S. 310, 316 (1945). Courts weigh the following factors to determine fair
play and substantial justice: (1) the burden on the defendant; (2) the interest of the forum state in
adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the
interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5)
the shared interest of the several states in furthering fundamental substantive social policies. Burger
King, 471 U.S. at 476-77.

 Applying the above factors to this case, the burden on Whalen does not seem overly great
when taking into account Whalen's initial willingness to take credit for the Federal Reserve Board's
decision. Though he argues now this was puffery and his statement was inaccurate, he still admits
he was taking partial credit for the decision. The harm occurred in Texas to a Texas corporation,
indicating an interest to the State of Texas in adjudicating this dispute. The most efficient resolution
of the controversy can be accomplished in the state in which the harm occurred. Accordingly, we
hold that the trial judge did not abuse its discretion in determining that the assumption of jurisdiction
does not offend traditional notions of fair play and substantial justice. 

 Since we have determined that the trial court acted reasonably in denying Whalen's special
appearance on grounds of specific jurisdiction, we do not reach the question of general jurisdiction.
We affirm the order of the trial court.


 Catherine Stone, Justice

PUBLISH