NO. 07-01-0456-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 3, 2002

_____

VON BRIESEN, PURTELL & ROPER, S.C., APPELLANTS

V.

WILLIAM J. FRENCH, APPELLEE

_____

FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;

NO. 45,515-C; HONORABLE JOHN FORBIS, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

This is an appeal from a denial of a special appearance filed by a Minnesota law firm in a suit against it filed by a former member of the firm. In the suit, appellee William J. French (French) asserted that the law firm had tortiuously interfered with a contract and conspired to further interfere with his contractual rights. Because the appellant law firm waived any challenge to the trial court's personal jurisdiction over it, we affirm the trial court's order.

The factual and procedural history of the underlying dispute is complex but helpful to an understanding of the issue presented. In 1995, French was a partner in the Milwaukee law firm of Gibbs, Roper, Loots & Williams (the Gibbs firm) and represented plaintiffs in several class action suits. The Gibbs firm decided that it no longer supported that litigation. French left the Gibbs firm to join the Whittenburg law firm in Amarillo. Upon his departure in December 1995, French entered into a detailed separation agreement with the Gibbs firm that set out the rights of the parties to fees and costs recovered in the class action suits. When French joined the Amarillo firm, it became Conant, Whittenburg, French & Schachter (CWFS). The Gibbs firm subsequently merged with another Minnesota firm under the firm name von Briesen, Purtell & Roper (VPR). VPR does not dispute that, by virtue of the merger, it became bound by the separation agreement.

When settlement of the class action became imminent, a dispute arose about the interpretation of the 1995 separation agreement. In April 1998, CWFS filed a declaratory judgment suit in the 251st District Court of Randall County seeking a declaration of the rights of the parties under the separation agreement. In the suit, VPR, French, and another attorney named Robert Gegios were also named as parties.[1] The action was removed to federal court in which VPR filed an answer, cross-claims, and counterclaims against French and CWFS alleging breach of contract, interference with contract, conversion, and unjust enrichment. The suit was subsequently remanded back to the

---

[1]Because the interests of VPR and Gegios are aligned in the suit, to simplify our discussion, we will use the name VPR to include Gegios.

2

251st District Court in which VPR filed another answer and reasserted the cross-claims and counterclaims.

In 1998, two of the class actions were resolved, resulting in the award of attorneys' fees and costs of over 24 million dollars. The undisputed portions of the attorneys' fees were distributed among the parties. CWFS retained the disputed portions, and on November 25, 1998, CWFS, French and VPR agreed that CWFS would hold $650,000 pending resolution of the dispute concerning the 1995 separation agreement.

In early 1999, French filed suit in state district court in Dallas alleging the managing partner of CWFS improperly distributed approximately 2 million dollars in fees. In the early hours of May 24, 1999, CWFS and VPR entered into a settlement agreement concerning their claims in the Amarillo suit. The settlement agreement contained a mutual release of claims between those parties, as well as an assignment of VPR's contract claims against French to CWFS in exchange for payments of some $800,000. VPR also released CWFS from the November 25, 1998 agreement to retain the $650,000 in disputed fees. On the same day, CWFS amended its pleadings adding the contract claims it obtained from VPR.

On September 1, 1999, all the parties to the Dallas suit entered into a settlement that provided for the division of the funds held by CWFS, a mutual release of the claims asserted in that litigation, and a dismissal of the suit. However, one significant limitation on the releases was that French's release only covered his contract claims against VPR. The following day, French asserted a cross-claim against VPR in the Amarillo suit in which he alleged VPR "aided, abetted and knowingly participated in the breach of fiduciary

3

obligation[s] of CWFS." In response to this pleading, VPR filed its special appearance challenging the Amarillo court's personal jurisdiction over it. On October 13, 2001, the trial court overruled those special exceptions. After a request by VPR, the trial court entered findings of fact and conclusions of law. Included are 13 findings of fact in which the trial court sets out the specific acts it found VPR performed in Texas. It also made six conclusions of law in which it found that: 1) VPR waived any objection to the court's jurisdiction; 2) it invoked the jurisdiction of the court; 3) the court had personal jurisdiction over VPR based upon its contacts with Texas; 4) the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice; 5) and 6) the claims arose out of VPR's acts in Texas. VPR now brings this interlocutory appeal from the trial court's ruling denying its special appearance to French's tort claims.

In its appeal, VPR presents two issues for our decision. They are 1) whether it had "minimum contacts" with Texas to support a finding of personal jurisdiction, and 2) whether its prior admission of "doing business" in Texas is sufficient to establish personal jurisdiction. French's brief addresses those issues, but initially focuses on whether VPR waived any objection to personal jurisdiction by filing an answer not subject to a special appearance.

It is fundamental to a court's jurisdiction to hear a dispute that it have both subject matter jurisdiction and personal jurisdiction over the parties to the dispute. *Federal Underwriters Exchange v. Pugh*, 141 Tex. 539, 174 S.W.2d 598, 600 (1943). The standards for determining whether a court has personal jurisdiction over a foreign

4

defendant are well established. The Texas long-arm statute authorizes the exercise of jurisdiction over non-residents "doing business" in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997). Although it lists particular acts that constitute "doing business," the statute also provides that the non-resident's "other acts" may satisfy the "doing business" requirement. *Id. See Schlobohm v. Schopiro*, 784 S.W.2d 355, 257 (Tex. 1990). The "doing business" standard of our long-arm statute permits it to reach as far as the federal constitutional requirements of due process will allow. *Guardian Royal Exchange Assur. Ltd. v. English China Clays, P.I.C.*, 815 S.W.2d 223, 226 (Tex. 1981). As a result, we consider only whether it is consistent with federal constitutional requirements of due process for Texas courts to assert *in personam* jurisdiction over a non-resident defendant. *Id.; see also Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 413-14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1964).

Federal constitutional requirements of due process limit the power of the state to assert personal jurisdiction over non-resident defendants. *Helicopteros*, 466 U.S. at 413-14. The federal supreme court divides the due process requirements into two parts: 1) whether the non-resident defendant has purposely established "minimum contacts" with the forum state and, if so, 2) whether the exercise of jurisdiction comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

The federal supreme court also recognizes two categories of personal jurisdiction, namely, specific and general. *Guardian Royal*, 815 S.W.2d at 228. When specific

5

jurisdiction is asserted, the causes of action must arise out of, or relate to, the non-resident defendant's contact with the forum state in order to satisfy the minimum contacts requirements. *Helicopteros*, 466 U.S. at 414 n.8. General jurisdiction is applicable when the cause of action does not arise from, or relate to, the non-resident defendant's contact with the forum state in order to satisfy the minimum contacts requirement. *Helicopteros,* 466 U.S. at 414-16.

In explicating the minimum contacts requirement as it applies to specific jurisdiction, the supreme court observed that due process requires a defendant have "fair warning" that their conduct could make them subject to suit in a jurisdiction. *Burger King,* 105 U.S. at 472. It instructs that the "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at the residents of the forum state. *Id.* The requirement that a defendant purposefully directed activities at forum residents ensures that a non–resident defendant will not be haled into a jurisdiction based solely upon "random," "fortuitous" or "attenuated" contacts or the "unilateral activity of another party or a third person." *Id.* at 475; *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

After determining that the non-resident defendant purposefully established minimum contacts with the forum state, we must then evaluate the contacts in light of other factors in order to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice. *A`sahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113-115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King*, 471 U.S. at 476. These factors

6

include 1) the burden on the defendant, 2) the interest of the forum state in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and 5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477. The federal supreme court has even commented that "[t]hese considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id*.

A defendant challenging a court's exercise of personal jurisdiction through a special appearance carries the burden of negating all bases of personal jurisdiction. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1986). This court has held that review of a trial court's resolution of questions of fact in a special appearance is one of factual sufficiency. *Ball v. Bingham*, 990 S.W.2d 343, 347 (Tex.App.--Amarillo 1999*, no pet.*)*. See also Shapolsky v. Brewton*, 56 S.W.3d 120 (Tex.App.--Houston [14th Dist.] 2001, pet. denied). *But see Whalen v. Laredo Nat. Bankshares, Inc.*, 37 S.W.3d 89, 91 (Tex.App.--San Antonio 2000, pet. denied).

Under the factual sufficiency standard, we may only reverse the decision of the trial court if its ruling is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *See In re King's Estate*, 150 Tex. 662, 664-65, 244 S.W.2d 660, 661 (1951). On VPR's request, the trial court filed findings of fact and conclusions of law. We have held that findings of fact are of no effect when the trial court

does not hear evidence. *Zimmerman v. Robinson*, 862 S.W.2d 162 (Tex.App.--Amarillo 1993, no writ) (citing *Timmons v. Luce*, 840 S.W.2d 582, 586 (Tex.App.--Tyler 1992, no writ)).

A party may waive any objection it might otherwise have to a court's exercise of personal jurisdiction over it. *Burger King*, 105 U.S. at 472, n.14; *Shapolsky*, 56 S.W.3d at 140. A party waives the right to contest personal jurisdiction over it when it makes a general appearance before the court. Any answer or other appearance before judgment is a general appearance unless it is made a "special appearance" for the purpose of challenging the trial court's jurisdiction over the party. Tex. R. Civ. P. 120a., *Shapolsky,* 56 S.W.3d at 140*.* A special appearance may be made as to a severable claim in the plaintiff's suit. Tex. R. Civ. P. 120a.

Here, VPR filed an answer, initially in federal district court, and another answer in state district court, neither of which were subject to a special appearance. In its appellate brief, VPR does not explain why these answers did not constitute general appearances so as to waive any challenge to the trial court's personal jurisdiction over it. The only discussion touching on this question is VPR's procedural recitation that French's counterclaims "were not properly served [on VPR] originally. But, after formal service, VPR filed its special appearance and motion to dismiss French's claims." This presumes that a special appearance was only required before it answered French's cross-claims.

8

However, the rule in Texas is that once a party has filed an answer or otherwise appeared, he is before the court for all purposes and formal service of cross-actions is not required. *See Carter v. G. & L. Tool Co. of Utah, Inc.*, 428 S.W.2d 677, 681 (Tex.Civ. App.--San Antonio 1968, no writ) (*citing Sullivan v. Doyle,* 108 Tex. 366, 194 S.W. 136 (1917))*.* Because VPR was already before the court by virtue of its answer to CWFS's petition, it waived any objection to personal jurisdiction with regard to French's cross-claims. *Carter*, *supra*.

Our holding that VPR waived its objection to the trial court's personal jurisdiction obviates the need to address its issues discussing minimum contacts and whether the exercise of jurisdiction over it comports with traditional notions of fair play and substantial justice.

Finding no reversible error, the judgment of the trial court is affirmed.

John T. Boyd
Chief Justice

Publish.

Johnson, J., concurs in the result.

9