

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00426-CV

PROFESSIONAL ASSOCIATION                                        APPELLANT
OF GOLF OFFICIALS

V.

PHILLIPS CAMPBELL & PHILLIPS,                                   APPELLEES
L.L.P. AND PATRICK C.
CAMPBELL JR.

----------

### FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Professional Association of Golf Officials (PAGO) appeals from the trial court's order granting a special appearance filed by Appellees Phillips Campbell & Phillips, L.L.P. (Phillips LLP) and Patrick C. Campbell Jr. (Campbell) and dismissing PAGO's claims for lack of personal jurisdiction. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

# I. BACKGROUND

## A. JURISDICTIONAL FACTS

PAGO is a labor union representing golf tournament officials employed by three professional golf-tour organizations: the PGA Tour, the Nationwide Tour, and the Champions Tour (collectively, the Tour).[2] PAGO was organized by Phillips LLP in Pennsylvania and had its principal place of business in Pennsylvania at Phillips LLP's office. PAGO's corporate income tax returns through 2010 listed Pennsylvania as its tax residence, and PAGO used Phillips LLP's Pennsylvania office and support staff "for its administrative and support needs, such as answering phones, storing records, bookkeeping, and billing." Phillips LLP is a Pennsylvania law firm with one office located in Pennsylvania. None of its attorneys are licensed to practice law in Texas, and it does not market itself to Texas residents.

In 1992, PAGO entered into an agreement with Phillips LLP under which PAGO would pay Phillips LLP an annual fee plus a percentage of each member's per annum compensation in exchange for its legal representation of PAGO. PAGO is governed by a board of directors made up of six directors and a president. Only the president may "supervise, conduct[,] and control all the business and affairs of [PAGO] and its officers." Members of PAGO were represented exclusively by PAGO "regarding wages, hours[,] and terms and

[2]The Tour's headquarters is located in Ponte Vedra, Florida.

2

conditions of employment" and gave PAGO complete authority to act on their behalf. PAGO's primary counsel at Phillips LLP for the operative time period was Campbell.

Phillips LLP and Campbell negotiated collective-bargaining agreements with the tour on PAGO's behalf. During Phillips LLP's representation, PAGO occasionally would conduct board meetings telephonically where board members would call in and discuss business matters with Campbell. One board member, Rich Pierson, was a Texas resident and attended these meetings by phone from his home in Texas. Campbell would also communicate with the board members by mail and email.

In 2007, Phillips LLP and PAGO signed another retainer agreement stating that Phillips LLP would serve as PAGO's counsel from January 1, 2007 through December 31, 2011, which would automatically extend through December 31, 2015 unless written intent to terminate was given at least 180 days before December 31, 2011.[3] At some point after this agreement, PAGO became concerned that Phillips LLP was failing to negotiate favorable terms in its collective-bargaining agreement with the Tour: "Specifically, Plaintiff lost salary and benefits, automobile and automobile insurance, first class travel, and a number of other items. To make matters worse, [Phillips LLP and Campbell]

_____

[3]The retainer agreement was signed by Dillard Pruitt, PAGO's president at the time.

advised [PAGO] not to challenge the Tour by and through the grievance process in an effort to keep a peaceful relationship."

The board of directors held its annual meeting in Texas on December 13 and 14, 2010, and discussed the loss of the automobile and automobile-insurance benefit. The location for the meeting was chosen by PAGO's board of directors. Campbell attended the meeting. At that time, PAGO's president was Mark Dusbabek. The relationship between PAGO and Phillips LLP continued to deteriorate, and PAGO decided to fire Phillips LLP. In late May 2011, Dusbabek, who was in Texas officiating the HP Byron Nelson Championship, called Campbell in Pennsylvania from his cell phone and verbally terminated the retainer agreement. On June 1, 2011, PAGO moved its headquarters to Texas. The next day, Campbell sent Dusbabek an email expressing "disappoint[ment]" with PAGO's decision and asking how to resolve their disagreements.[4] On June 6, 2011, Dusbabek sent Campbell a letter formally terminating the retainer agreement and requesting that PAGO's files be forwarded to PAGO's new attorney located in Texas.[5] Dusbabek also informed Campbell that Phillips LLP "has been paid handsomely for the services provided and we do not believe any compensation is due and owing." On November 9, 2011, PAGO paid Campbell

---

[4]Campbell sent a copy of the email to twenty-one PAGO members, some of whom were Texas residents.

[5]It appears that Phillips LLP never forwarded PAGO's files. Indeed, this failure is the basis of one of PAGO's claims against Phillips LLP and Campbell.

4

$37,922.00 "in complete satisfaction of the amounts claimed to be due and owing." On the check, PAGO's treasurer at the time, John Lillvis, noted PAGO's address as being located in Orange City, Florida.[6]

### B. PROCEDURAL FACTS

Phillips LLP filed a writ of summons in Pennsylvania state court on February 3, 2012, seeking to collect the amounts it believed PAGO still owed under the retainer agreement.[7] PAGO filed a petition in the trial court on March 1, 2012, raising claims against Phillips LLP and Campbell for legal malpractice, breach of fiduciary duty, and breach of contract. PAGO also requested a declaratory judgment that it properly terminated the retainer agreement and that it had fully paid Phillips LLP. Phillips LLP and Campbell filed a special appearance arguing that the trial court did not have personal jurisdiction over them. *See* Tex. R. Civ. P. 120a(1). PAGO amended its petition and alleged twenty-eight "venue" facts in an attempt to show personal jurisdiction over

---

[6]Although the trial court struck the portion of Lillvis's affidavit that discussed the November 2011 payment to Campbell, it does not appear that the trial court struck the exhibit attached to Lillvis's affidavit, which contained the check and Lillvis's cover letter to Campbell.

[7]A writ of summons is a procedure by which a civil action is commenced in Pennsylvania state court. Pa. R. Civ. P. 1007. PAGO argues the writ of summons is not relevant to our personal-jurisdiction inquiry. While it is true that a writ of summons under Pennsylvania law does not trigger the federal first-to-file rule regarding venue, the writ of summons could be relevant in determining Phillips LLP's and Campbell's minimum contacts with Texas. *See Freshtec Food Processing, Equip. Int'l, LLC v. Easy Tray, LLC*, No. Civ. A. 05-142J, 2005 WL 3116030, at *6 n.6 (W.D. Penn. Nov. 22, 2005) (recognizing writ of summons will not trigger first-to-file rule to preclude transfer to more appropriate venue).

5

Phillips LLP and Campbell. The trial court held a non-evidentiary hearing and granted the special appearance, dismissing PAGO's claims for lack of personal jurisdiction. The trial court then entered the following "findings of fact" supporting its conclusion of law that personal jurisdiction over Phillips LLP and Campbell was not present:

1. Defendants are not, and have never been, residents of Texas or domiciled in Texas.

2. Defendants are not required to maintain a registered agent for service in Texas and [have] not registered with the Texas Secretary of State's office.

3. Defendants do not engage in business in Texas within the meaning of [section 17.042] . . . of the long-arm statute. . . .

4. Defendants do not maintain a place of business in Texas and do not maintain offices in Texas.

5. Defendants have no employees, servants, or agents within the state of Texas.

6. Defendants do not own any real or personal property in Texas.

7. Defendants do not maintain any bank accounts, telephone numbers, or post office boxes in Texas.

8. Plaintiff's causes of action do not arise out of, nor relate to, any purposeful conduct of either of the defendants directed toward the state of Texas.

9. There is no substantial connection between the defendants' contacts with Texas and the operative facts of this litigation.

10. The defendants' contacts with Texas were not purposeful; rather, they were random, isolated, or fortuitous.

11. Neither defendant has had continuous and systematic contacts with Texas.

6

12.     The exercise of jurisdiction over the defendants would not comport with traditional notions of fair play and substantial justice.

PAGO now appeals the final dismissal of its claims for lack of personal jurisdiction. *See* Tex. R. App. P. 26.1(a). *But see* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 2013) (allowing accelerated appeal from interlocutory order granting or denying special appearance). In five issues, PAGO argues the trial court erred in granting Phillips LLP and Campbell's special appearance because (1) they failed to negate all factual bases PAGO asserted conferred personal jurisdiction, (2) they had the required minimum contacts with Texas, (3) they purposefully availed themselves of the benefits of conducting business in Texas, (4) their contacts were continuous and systematic, and (5) the exercise of personal jurisdiction would not offend the traditional notions of fair play and substantial justice.[8]

_____

[8]In essence, PAGO attempts to argue that the trial court's legal conclusion that personal jurisdiction was not present was supported by insufficient evidence. Even though PAGO asserts a de-novo standard applies to every issue, we are bound to review the factual findings that support the ultimate conclusion of law for evidentiary sufficiency. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Because we have recast PAGO's issues to comport with these review restrictions, we will not specifically address the issues as numbered in PAGO's appellate briefs. But we will review each element of a minimum-contacts determination and, if necessary, address fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945).

7

## II. STANDARDS AND BURDENS IN REVIEW OF PERSONAL JURISDICTION

### A. APPELLATE PRISM

The standards of review and the burdens of proof applicable to our review of a trial court's ruling on a special appearance are well established. Whether a trial court has personal jurisdiction is a question of law.[9] *BMC Software*, 83 S.W.3d at 794. A plaintiff has the initial burden to plead sufficient allegations to bring a nonresident within the provisions of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). Once a plaintiff sufficiently pleads such jurisdictional allegations, the burden shifts to the defendant to negate the bases of personal jurisdiction asserted by the plaintiff.[10] *Kelly*, 301 S.W.3d at 658; *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007).

---

[9]Even if PAGO were correct in its assertion that the trial court's findings of fact three, eight, nine, ten, eleven, and twelve are nothing more than conclusions of law, we would still review the supporting factual findings, whether express or implied, for sufficiency and then review the court's legal conclusions drawn from the facts to determine their correctness as a matter of law. *BMC Software*, 83 S.W.3d at 794.

[10]PAGO argues that because Phillips LLP and Campbell failed to refute each personal-jurisdiction fact raised in PAGO's petition, the trial court was required to conclude personal jurisdiction was present. However, many of PAGO's personal-jurisdiction allegations are, themselves, conclusions and not factual assertions. Further, Phillips LLP and Campbell ably point out how each allegation was refuted.

In determining whether the nonresident defendant sufficiently negated the pleaded bases for personal jurisdiction, the trial court frequently must resolve questions of fact. *BMC Software*, 83 S.W.3d at 794. While we review de novo the trial court's legal conclusion that personal jurisdiction does not exist, any supporting findings of fact are reviewed for factual and legal sufficiency. *Id.* If the trial court's findings are supported by sufficient evidence, we must decide as a matter of law whether those facts negate all bases for personal jurisdiction. *Id.*

In reviewing the legal sufficiency of the evidence to support a fact finding, we consider evidence favorable to the finding if a reasonable fact-finder could and disregard evidence contrary to the finding unless a reasonable fact-finder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007). We are mindful that anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996). With a factual-sufficiency review, we may only "unfind" a factual finding if we determine that the credible evidence supporting the finding is too weak or that the finding is against the great weight and preponderance of the credible evidence contrary to the finding.[11] *Tex. Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

---

[11]This standard applies because Phillips LLP and Campbell had the burden to disprove PAGO's pleaded jurisdictional facts. *See Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 184 (Tex. App.—Fort Worth 1995, no writ); W. Wendell Hall, *Hall's Standards of Review in Texas*, 42 St. Mary's L.J. 3, 41–42 (2010).

9

## B. Long-Arm Statute and Due Process

Of course, a special appearance challenges the trial court's personal jurisdiction over a defendant. Texas courts may not exercise personal jurisdiction over a nonresident defendant unless federal due process requirements and the Texas long-arm statute are satisfied. Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–.042 (West 2008); *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 412–13 & n.7, 104 S. Ct. 1868, 1871 & n.7 (1984). The Texas long-arm statute and the requirements of due process are coextensive; thus, the long-arm statute is satisfied if the exercise of personal jurisdiction comports with federal due process. *See Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). Federal due process is satisfied if (1) the nonresident defendant has "minimum contacts" with Texas and (2) the exercise of personal jurisdiction over the nonresident defendant does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316, 66 S. Ct. at 158.

### 1. Minimum Contacts

Minimum contacts are sufficient when a nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958). In determining purposeful availment, we consider: (1) the defendant's own actions but not the unilateral activity of another party, (2) whether the defendant's actions were purposeful

10

rather than "random, isolated, or fortuitous," and (3) whether the defendant sought "some benefit, advantage, or profit by 'availing' itself" of the privilege of doing business in Texas. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). The nonresident defendant's contacts are considered as a whole and not in isolation, focusing on the quality and not the quantity of the contacts. *Retamco Operating*, 278 S.W.3d at 339; *Guardian Royal*, 815 S.W.2d at 230 n.11.

A defendant's contacts may give rise to two types of personal jurisdiction: specific and general jurisdiction. When specific jurisdiction is asserted, we focus on the relationship between the defendant, the forum, and the litigation. *Moki Mac*, 221 S.W.3d at 575–76. In short, the asserted cause of action must "arise from or relate to" the nonresident defendant's contacts with the forum. *Guardian Royal*, 815 S.W.2d at 228. General jurisdiction, however, is a more demanding test to meet than specific jurisdiction. General jurisdiction is not dispute dependent but requires continuous and systematic contacts. *Helicopteros*, 466 U.S. at 414–16, 104 S. Ct. at 1872–73.

## 2. Fair Play and Substantial Justice

If minimum contacts are present, whether general or specific, the nonresident defendant then bears the burden to establish that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *Knight Corp. v. Knight*, 367 S.W.3d 715, 726 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding). When the nonresident defendant has purposefully

11

established minimum contacts with the forum state, it will be rare that the exercise of jurisdiction over the nonresident defendant would not comport with fair play and substantial justice. *Guardian Royal*, 815 S.W.2d at 231.

## III. APPLICATION

### A. CONSIDERED EVIDENCE

We first must clarify what evidence should be considered in our review of the personal-jurisdiction determination. Again, we are asked to review the legal and factual sufficiency of the evidence to support the trial court's findings of fact. *See BMC Software*, 83 S.W.3d at 794. In a legal-sufficiency review, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In a factual-sufficiency review, we consider all the evidence in the record to determine if the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Fish v. Tandy Corp.*, 948 S.W.2d 886, 892 (Tex. App.—Fort Worth 1997, writ denied).

The parties filed multiple affidavits in support of their jurisdictional arguments. Before the trial court's hearing on Phillips LLP and Campbell's special appearance, which we have already stated was non-evidentiary, the trial court struck multiple portions of PAGO's, Phillips LLP's, and Campbell's proffered affidavits. No one attacks the propriety of these rulings on appeal. However, PAGO, Phillips LLP, and Campbell rely on many of these stricken facts on

12

appeal in arguing their respective positions regarding the exercise of personal jurisdiction over Phillips LLP and Campbell. Evidence is not conclusive unless it was admitted into evidence and was not rebutted. *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 275 (Tex. 1995). As such, we cannot reverse a fact finding and render a different judgment based on excluded evidence. *Id.* Thus, we will not consider the evidence excluded by the trial court in our sufficiency review of personal jurisdiction over Phillips LLP and Campbell.

## B. MINIMUM CONTACTS

Considering Phillips LLP's and Campbell's contacts with Texas as a whole, we conclude that the evidence is legally and factually sufficient to support the trial court's implied findings of fact regarding the lack of minimum contacts. In short, Phillips and Campbell did not purposefully avail themselves of the benefits of conducting business in Texas such that they would invoke the benefits and protections of Texas law.

### 1. General Jurisdiction

In determining general jurisdiction, we consider Phillips LLP's and Campbell's continuous and systematic contacts with Texas. *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 169 (Tex. 2007). Phillips LLP organized PAGO under the laws of Pennsylvania. Indeed, PAGO consistently listed Pennsylvania—specifically Phillips LLP's office—as its corporate location on its corporate tax returns. Phillips LLP is a Pennsylvania law firm with no offices in Texas, and Campbell is licensed to practice law in Pennsylvania only.

13

Phillips LLP has never "represented any Texas residents in litigation or transactions in Texas." There is no evidence Phillips LLP or Campbell advertises in Texas or markets its services in Texas.[12] Although Campbell attended PAGO's December 2010 annual meeting, PAGO's board of directors unilaterally selected the venue as provided in its constitution and by-laws. Rich Pierson, a PAGO board member and a Texas resident, attended "numerous" PAGO board meetings by telephone from his home in Texas. Pierson asserts Phillips LLP and Campbell "initiated" these calls, presumably from their Pennsylvania office. Campbell sent emails and letters regarding PAGO business to several Texas residents: Pierson and three PAGO members.[13] Further, Dusbabek, who does not appear to be a Texas resident, fired Phillips LLP and Campbell by cell phone while Dusbabek was in Texas. But these contacts—which comprise a miniscule portion of Phillips LLP's and Campbell's actions on behalf of PAGO during their almost twenty-year business relationship—do not show the "demanding minimum contacts" that general jurisdiction requires. *BMC Software*, 83 S.W.3d at 797–

---

[12]Although PAGO attempted to introduce a screen shot of Campbell's profile on Phillips LLP's web site in which he was touted as "nationally recognized," the trial court struck the exhibit. Further, PAGO specifically states in its reply brief that it does not challenge the trial court's findings of fact that Phillips LLP and Campbell are not Texas residents and do not maintain a place of business in Texas. Therefore, these findings are conclusively established on appeal. *See IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997).

[13]The record does not reflect how many total members PAGO has; however, appellate counsel for PAGO indicated during oral argument that PAGO has twenty-seven members.

14

98; *CSR, Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996); *see, e.g.*, *Michiana*, 168 S.W.3d at 786–87; *Waterman S.S. Corp. v. Ruiz*, 355 S.W.3d 387, 412–15 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *Triple SSS Aviation, Ltd. v. Adkison*, No. 12-07-00328-CV, 2008 WL 142640, at *3 (Tex. App.—Tyler Jan. 16, 2008, no pet.) (mem. op.); *Credit Commercial de Fr., S.A. v. Morales*, 195 S.W.3d 209, 220–21 (Tex. App.—San Antonio 2006, pet. denied). *See generally PHC-Minden*, 235 S.W.3d at 168 (surveying law requiring extensive contacts for general jurisdiction and recognizing general jurisdiction typically requires "the defendant to have an office in the forum state"). The evidence was legally and factually sufficient to support the trial court's conclusion that general jurisdiction over Phillips LLP and Campbell was not satisfied.

## 2. Specific Jurisdiction

Specific jurisdiction, while less demanding than general jurisdiction, still requires a substantial connection between Phillips LLP's and Campbell's contacts with Texas and the operative facts of the underlying litigation. *See Moki Mac*, 221 S.W.3d at 576, 585. Thus, our focus is on the incidents made the basis of PAGO's suit and not on where Campbell or Phillips LLP directed a tort or where the effects of tortious conduct will be felt. *Moki Mac*, 221 S.W.3d at 585; *Michiana*, 168 S.W.3d at 790–92; *BMC Software*, 83 S.W.3d at 796.

PAGO raised claims for legal malpractice, breach of fiduciary duty, and breach of contract against Phillips LLP and Campbell. Phillips LLP's and Campbell's contacts with Texas regarding the majority of these claims were

15

occasional multi-party conference calls in which some participants were located in Texas. Campbell attended an annual board meeting in Texas, and Dusbabek fired Phillips LLP and Campbell by phone while Dusbabek was in Texas. PAGO's claims against Phillips LLP and Campbell arose from their representation of PAGO after the 2007 retainer agreement was signed. PAGO alleged that Phillips LLP and Campbell gave "faulty advice" to PAGO while negotiating a collective-bargaining agreement with the Tour and after the agreement was entered. PAGO contended that this faulty advice caused PAGO to lose "over and over again at the bargaining table and in its interaction with the Tour." After PAGO fired Phillips LLP and Campbell and, presumably, after PAGO moved its headquarters to Texas, PAGO alleged that Philips LLP and Campbell "demanded well in excess of $100,000.00 for amounts due and owing for 2012." Similarly, PAGO asserted that Phillips LLP and Campbell breached their fiduciary duty owed to PAGO by continually refusing "to return and provide [PAGO's] files despite housing all of its files at [Phillips LLP and Campbell's] office."

Although some of the advice PAGO claims was deficient necessarily occurred during phone calls that Pierson, a Texas resident, participated in and during the 2010 annual board meeting in Texas, these contacts were a small portion of the legal advice Phillips LLP and Campbell provided PAGO, a Pennsylvania organization, from 2007 until PAGO fired Phillips LLP and Campbell in May 2011. Further, Phillips LLP filed its writ of summons demanding

16

payment from PAGO in Pennsylvania. The contacts relating to PAGO's claims against Phillips LLP and Campbell are too inconsequential in light of the parties' ongoing relationship to support a claim that Phillips LLP and Campbell purposefully directed their business activities regarding PAGO to Texas. *See, e.g.*, *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597–98 (Tex. 2007); *Michiana*, 168 S.W.3d at 781, 791–92; *Knight*, 367 S.W.3d at 726–27; *cf. Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 850 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (finding specific jurisdiction over nonresident defendant where fraud claim was based on defendant's telephonic representations that were made to Texas residents on two specific dates and on presence at two meetings in Texas because contacts were substantial and because the misrepresentations that formed the basis of the claim were made during the calls and meetings); *Fish*, 948 S.W.2d at 895 (finding specific jurisdiction over defendant, a resident of Russia, where defendant extensively negotiated with Texas corporation through phone, fax, mail, and defendant's personal visits to Texas).

Likewise, PAGO's claims directed to Phillips LLP and Campbell's actions demanding payment and failing to turn over PAGO's files, which occurred after PAGO moved its headquarters to Texas, do not rely on facts sufficient to confer specific jurisdiction over Phillips LLP or Campbell in a Texas state court. *See, e.g.*, *Abilene Diagnostic Clinic, PLLC v. Paley, Rothman, Goldstein, Rosenberg, Eig & Cooper, Chartered*, 364 S.W.3d 359, 364–66 (Tex. App.—Eastland 2012,

17

no pet.); *Ahrens & DeAngeli, P.L.L.C. v. Flinn*, 318 S.W.3d 474, 484–85 (Tex. App.—Dallas 2010, pet. denied). Because our personal-jurisdiction focus regarding a legal-services claim must be on where the attorneys performed the legal work at issue, Phillips LLP and Campbell's alleged tortious conduct in failing to surrender PAGO's files arose in Pennsylvania. *See Abilene Diagnostic*, 364 S.W.3d at 365–66. Phillips LLP and Campbell's legal judgments and actions were taken in Pennsylvania. *See Markette v. X-Ray X-Press Corp.*, 240 S.W.3d 464, 468–69 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (op. on reh'g). Torts allegedly directed to a Texas organization cannot form the basis for exercising specific jurisdiction. *Proskauer Rose LLP v. Pelican Trading, Inc.*, No. 14-08-00283-CV, 2009 WL 242993, at *2–4 (Tex. App.—Houston [14th Dist.] Feb. 3, 2009, no pet.) (mem. op.). The evidence was legally and factually sufficient to support the trial court's conclusion that specific jurisdiction was not satisfied.

Even assuming the trial court found credible all the facts submitted by PAGO, the assertion of personal jurisdiction over Phillips LLP or Campbell is improper as a matter of law. PAGO labels these claims as "post-termination bad acts," which it argues should be considered in light of PAGO's new status as a Texas organization. The existence of an attorney-client relationship between an out-of-state attorney and an organization in Texas, without other sufficient contacts with Texas, does not confer personal jurisdiction over the non-resident attorney in Texas. *Ahrens & DeAngeli*, 318 S.W.3d at 484–85; *Klenk v.*

18

*Bustamante*, 993 S.W.2d 677, 682 (Tex. App.—San Antonio 1998, no pet.), *overruled on other grounds by BMC Software*, 83 S.W.3d at 794.

## C. FAIR PLAY AND SUBSTANTIAL JUSTICE

Because we have concluded that sufficient minimum contacts were not present under either a general- or specific-jurisdiction inquiry, we need not address whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *See, e.g.*, *Wilson v. Belin*, 20 F.3d 644, 650 n.7 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Grand Aerie Fraternal Order of Eagles v. Haygood*, 402 S.W.3d 766, 782 (Tex. App.—Eastland 2013, no pet.) (op. on reh'g). *See generally* Tex. R. App. P. 47.1.

## IV. CONCLUSION

After considering Phillips LLP's and Campbell's contacts with Texas as a whole and under the appropriate sufficiency standards of review, we conclude that they did not purposefully avail themselves of the privilege of conducting activities within Texas. Phillips LLP's and Campbell's actions were random, isolated, and fortuitous and they did not seek a benefit, advantage, or profit by availing themselves of the privilege of doing business in Texas. Therefore, they did not have sufficient minimum contacts with Texas to satisfy federal due process, which is coextensive with the Texas long-arm statute. We overrule PAGO's issues and affirm the trial court's judgment.

19

LEE GABRIEL
JUSTICE

PANEL:  MCCOY and GABRIEL, JJ; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  December 27, 2013